Egan Jr., J.
Appeal from an order of the Supreme Court (Meyer, J.), entered December 26, 2012 in Essex County, which granted defendants’ motion for summary judgment dismissing the complaint.
In July 2008, plaintiff, a Vermont resident, was camping at Roger’s Rock Campground on the shores of Lake George in Warren County with her husband, daughter and her daughter’s friend. On the evening of July 4, 2008, plaintiff and the rest of her group, together with two additional friends, went to get ice cream and watch a fireworks display that was being held at the little league field located in Bicentennial Park on Burgoyne Road in the Town of Ticonderoga, Essex County. The fireworks display, which was an annual event for the Town, was designed, set up and executed by defendants.
Defendants’ representatives described the setup and ignition process for the fireworks display as follows. The actual fireworks or shells are placed inside of fiberglass tubes known as mortars, and the mortars, in turn, are placed inside of wooden racks that are arranged according to the design for the show. Once the *1149 racks are in place, they are “daisy chain[ed]” or secured to one another, and “A” frames are nailed to the end of each row for additional stability. During the course of the show, a technician would hand light each shell, which contained a three- or four-second safety fuse, with a road flare. The flame would burn down to the lift charge, which would propel the shell out of the mortar and ignite the timer fuse, the length of which depended upon the duration of lift desired for each shell. The timer fuse would then ignite the burst charge, which would open the shell and create the starburst patterns in the night sky. The “shell count” for the Ticonderoga display was 1,075 shells and 1,500 illuminations;[1] this count included—insofar as is relevant here—75 six-inch mortars, which were secured three to a rack. According to defendants’ representatives, industry standards required a safety radius of 70 feet per inch based upon the largest mortar utilized, resulting in a radius of 420 feet for the Ticonderoga show.
On the evening in question, plaintiff and her group arrived at the little league field around 9:00 p.m., parked, “walked across the street” and sat on the grass “fairly close to the road” to watch the show. Approximately 30 to 40 minutes into the show, one of the six-inch shells malfunctioned and detonated inside of the mortar.[2] According to one of defendants’ representatives, this occurrence is known as a “blow by” and results from “a flaw in the seal of the time fuse.” This flaw, in turn, “allows the lift charge to bypass the time fuse and get to the core of the shell,” causing the shell to detonate in the mortar. When this shell malfunctioned, it destroyed the rack in which it was housed—causing another mortar in the rack to become dislodged. The explosion from the malfunctioning shell apparently ignited the dislodged shell, causing the dislodged shell to be propelled—horizontally—“directly into the crowd,” eventually striking a spectator’s cooler and detonating.[3] As this second shell approached plaintiff and her group, plaintiff pivoted to her right and attempted to shield her daughter and her daughter’s friend. During this process, plaintiff’s right hand, which had been resting on the ground, slipped on the grass. Plaintiff immediately felt a “pop” and pain in that hand, and a subsequent MRI revealed a torn collateral ligament necessitating surgical intervention.
*1150 Plaintiff thereafter commenced this negligence and strict products liability action against defendants seeking to recover for injuries to her hand.[4] Following joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint, contending that they owed no duty to plaintiff.[5] Supreme Court granted defendants’ motion and dismissed the complaint in its entirety, prompting this appeal by plaintiff.
Absent evidence that defendant manufactured, sold, distributed or otherwise marketed the fireworks in question, Supreme Court properly granted defendants summary judgment dismissing plaintiffs strict products liability claim. We reach a contrary conclusion, however, with respect to Supreme Court’s dismissal of plaintiffs negligence claim and, therefore, Supreme Court’s order must be modified to that extent.
To establish a prima facie case of negligence, the plaintiff is required to demonstrate that the defendant owed a duty to him or her, that the defendant breached that duty and that such breach was a proximate cause of the injuries sustained (see Ortega v Liberty Holdings, LLC, 111 AD3d 904, 906 [2013]; Merchants Mut. Ins. Co. v Quality Signs of Middletown, 110 AD3d 1042, 1043 [2013]). “The existence and scope of [the] alleged tortfeasor’s duty is, in the first instance, a legal question for determination by the court”—giving due consideration to “whether the relationship of the parties is such as to give rise to a duty of care, whether the plaintiff was within the zone of foreseeable harm and whether the accident was within the reasonably foreseeable risks” (Di Ponzio v Riordan, 89 NY2d 578, 583 [1997] [citations omitted]; see Dance Magic, Inc. v Pike Realty, Inc., 85 AD3d 1083, 1088-1089 [2011]; Kemper v Arnow, 18 AD3d 939, 940-941 [2005], lv denied 5 NY3d 708 [2005]). Once it is determined that a particular duty exists, whether— and the extent to which—that duty was breached and whether any such breach was a proximate cause of the plaintiffs injuries generally are factual issues for the trier of fact to resolve (see Grant v Nembhard, 94 AD3d 1397, 1398 [2012]; Finnigan v Lasher, 90 AD3d 1286, 1287 [2011]; MacDonald v New York State Olympic Regional Dev. Auth., 46 AD3d 1085, 1086 [2007]).
Here, defendants possessed, furnished, set up and ignited “a large supply of dangerous fireworks” (Morang v Burnett, 216 *1151 AD2d 835, 836 [1995]) and, as such, were bound to exercise “a high degree of care” in order to prevent injury to others (Travell v Bannerman, 174 NY 47, 51 [1903]; accord Morang v Burnett, 216 AD2d at 836). As to the foreseeability of a malfunction, one of defendants’ representatives testified at his examination before trial that, although he had not experienced a “blow by” prior to the Ticonderoga show, such an event was “an occurrence in the industry,” that “the chance for a malfunction [was] obviously there” and that malfunctions can be dangerous. As to whether plaintiff was in the zone of foreseeable harm, plaintiff estimated that she was sitting approximately 700 feet from where the shells were being launched (well outside the purported safety radius) and, as noted previously, acknowledged that the debris from the first malfunctioning shell did not reach her location. Plaintiff also testified, however, that the second shell exploded “[v]ery close” to where she was sitting, causing sparks to land around her group, and one of defendants’ representatives conceded that “hot flaming debris” from this second shell was propelled into the crowd of spectators. Further, when plaintiff returned to the ball field the following day, she observed scorch marks on the grass—presumably caused by flaming debris from the detonated shell—approximately 20 feet away from where she had been sitting. Moreover, the police report prepared in this matter makes reference to a witness who claimed that the second shell exploded “15-20 feet away from the civilians sitting by Burgoyne [R]oad.” Under these circumstances, we are satisfied that plaintiff was within the zone of foreseeable harm (compare Lynfatt v Escobar, 71 AD3d 743, 744-745 [2010], lv denied 15 NY3d 709 [2010]). Accordingly, Supreme Court erred in finding that defendants owed no duty to plaintiff.
As to the issues of breach and proximate cause, suffice it to say that questions of fact preclude an award of summary judgment to defendants with respect to plaintiffs negligence claim. Even assuming that defendants were in compliance with all applicable federal, state, local and industry regulations and standards—facts that have yet to be established—the record nonetheless contains numerous references to the allegedly disorganized nature of the fireworks show and the purported difficulties that defendants’ technicians were having with detonating the devices—as well as one technician’s alleged insistence that “the show go on” even after the shells malfunctioned. To the extent that defendants contend that they could not possibly foresee the manner in which plaintiff was injured, we note that plaintiff was not required to “demonstrate the foreseeability of the precise manner in which the accident oc *1152 curred or the precise type of harm produced in order to establish the foreseeability component of [her negligence claim]” (Di Ponzio v Riordan, 89 NY2d at 583-584; see Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980]). In short, viewing the evidence in the light most favorable to plaintiff as the nonmoving party (see U.W. Marx, Inc. v Koko Contr., Inc., 97 AD3d 893, 894 [2012]), we cannot say that defendants established—as a matter of law—that they were without legal responsibility for plaintiffs injuries.
Lahtinen, J.E, McCarthy and Garry, JJ., concur.
Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted that part of defendants’ motion for summary judgment dismissing plaintiffs negligence cause of action; motion denied to that extent; and, as so modified, affirmed.

. Illuminations, which are considered to be “ground displays,” are propelled between 75 and 200 feet into the air.

. Plaintiff saw the first shell detonate, but stated that the sparks and debris therefrom did not come near where she and her group were sitting.

. The resulting explosion was captured on video, and the record contains still photographs from that video displaying a significant detonation.

. Although Pyro Engineering, Inc. and Bay Fireworks each are named defendants, it appears that Bay Fireworks is the “doing business as” for Pyro Engineering, Inc.

. Defendants also commenced a third-party action against July 4 Ever, Inc., the entity from which they purchased some of the shells used during the Ticonderoga show.